# EXHIBIT "A"

**General Civil and Domestic Relations Case Filing Information Form**

☒ Superior or ☐ State Court of __CLAYTON_____ County

| For Clerk Use Only | | |
|---|---|---|
| | | 2024CV03683-11 |
| **Date Filed** _____ | **Case Number** _____ | |
| **MM-DD-YYYY** | | |

**Plaintiff(s)**

| | | | | |
|---|---|---|---|---|
| WILSON | TONY | LAROD | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

| | | | | |
|---|---|---|---|---|
| ASI HOME INSURANCE CORP | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** __BRIAN BRADDY_____    **State Bar Number** _967126_____    **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☉ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
**Case Number**                    **Case Number**

☉ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____    **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.20

**ORIGINAL SUMMONS**

## SUPERIOR COURT OF CLAYTON COUNTY

## STATE OF GEORGIA

TONY LAROD WILSON
_____

                                    Plaintiff

260 Peachtree Street - Suite 2200
_____

                                    Address

Atlanta, GA 30303
_____

                    VS.

ASI HOME INSURANCE CORP
_____

                                    Defendant

2985 Gordy Parkway, 1st Floor
_____

                                    Address

Marietta, GA 30066
_____

2024CV03683-11

CASE NUMBER_____

SUMMONS

_____Term, 20 _____

CALENDAR DATES

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

**Attorney Brian Braddy**
**260 Peachtree Street Suite 2200**
**Atlanta, GA 30303**
**bpb@yourinsuranceattorney.com**

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Chanae Q. Clemons
Clerk of Court  Superior
Court Division
/s/ Ariel Gilson

By_____

Deputy Clerk

ORIGINAL SUMMONS.wpd                                                                01/01/11

AG

2024CV03683-11
CLAYTON COUNTY, GA
9/19/2024 11:15 AM
Chanae Q. Clemons
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON
## COUNTY STATE OF GEORGIA

TONY LAROD WILSON,

   **Plaintiff,**

   **vs.**

ASI HOME INSURANCE CORP,

**a foreign corporation,**

**Defendant.**

**CIVIL ACTION FILE NO:**
     2024CV03683-11

## COMPLAINT

**COMES NOW** Plaintiff, TONY LAROD WILSON (the "Insured"), by and through counsel, and files this Complaint for breach of first party property insurance contract and bad faith in payment of insurance coverage against Defendant, ASI HOME INSURANCE CORP (the "Insurance Company"), and in support hereof, states as follows:

### PARTIES

**1.**

The Insured is an adult resident citizen of Clayton County, Georgia.

**2.**

Upon information and belief, the Insurance Company is a foreign company, registered to transact business in, and in fact transacts business in, the State of Georgia. The Insurance Company is in the business of insuring risks and properties located throughout the United States, including Georgia. The Insurance Company maintains an office at 2985 Gordy Parkway, 1st Floor, Marietta,

GA, 30066, USA where it may be served with process through its registered agent, CORPORATE CREATIONS NETWORK INC., as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith in payment of insurance claim, and the Court has personal jurisdiction over the Insurance Company because it is transacting business and insuring properties in the State of Georgia, including insuring properties in Clayton County Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

### 4.

Venue is proper in this Court because the Insurance Company has insured properties in Clayton County, Georgia and said subject property resides in Clayton County, Georgia where the cause of action arose pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

## THE POLICY

### 5.

In consideration of the premiums paid by the Insured, the Insurance Company issued Policy number GAA173929, **Exhibit "A"** (the "Policy").

### 6.

Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property against sudden and accidental direct physical loss.

**7.**

The damaged property is located at 2374 Clapton Ct, Jonesboro, GA 30236 (the " Property" or the "home").

### DAMAGE TO THE INSURED PROPERTY

**8.**

On or about November 26, 2023, while the Policy was in full force and effect, the Property sustained a covered loss as a result of Wind (the "Loss").

**9.**

The Insured submitted a claim to the Insurance Company for coverage due to the Loss that was suffered.

**10.**

The Insured promptly and timely notified the Insurance Company of the damage to the home and made a claim pursuant to the Policy. As a result, the Insurance Company assigned claim number 1289695-231115 to the Loss and assigned an agent to investigate the Insured's claim for damage. The adjuster was authorized as the Insurance Company's representative and agent for purposes of the Loss.

**11**.

At all times material hereto, the Insured fully cooperated and the Property at issue was made available to the Insurance Company and its representatives to inspect and investigate the Loss.

**12.**

The Insurance Company, through its authorized representative and agent, performed a site inspection of the Insured's home.

**13.**

The Insurance Company's authorized representative and agent incurred the duty of acting with due diligence in achieving a proper disposition of the Insured's claim when they undertook the handling of the claim.

**14.**

On or about December 14, 2023 and March 26, 2024, the Insurance Company acknowledged that the Property sustained a covered Loss and offered payment. However, the Insurance Company, through its authorized representative and agent, grossly underestimated the scope of damages from the Loss

**15.**

The Insurance Company prepared an estimate for the damage totaling $8,190.94 as the full cost of repair with $8,060.17 being the estimated actual cash value of the Loss. After applying the Policy deductible of $2,000 and a deduction for recoverable depreciation in the amount of $130.77, a payment was issued in the amount of $5,996.13. However, after diligent inspection of the Loss, it was obvious that the Property sustained covered damages greater than the damages acknowledged by the Insurance Company.

**16.**

As a result of the Insurance Company's failure to adequately adjust the Loss, the Insured requested a re-evaluation of the claim. The Insured hired counsel, submitted sworn proof of loss for damages covered under the Policy, submitted all pictures and receipts available and in their possession, and provided an updated estimate for the Loss. The Insurance Company refused to reconsider its position regarding the Loss and continued to frivolously and baselessly deny any further payment. Furthermore, the Insurance Company continued to ignore the opinions of the

Insured's experts as to the amount of damage and the amount it will cost to restore the Property to its pre-loss condition.

### 17.

The Insurance Company did not act fairly and honestly toward the Insured with due regard for the claim when the Insurance Company failed to adequately compensate the Insured for the entire Loss. This is in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its Insured and with due regard for their interests.

### 18.

All contractual obligations under the Policy and conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

### 19.

There exists a genuine, justifiable controversy between the Insured and the Insurance Company as to whether the Insurance Company t is responsible for coverage for the replacement cost of the actual physical damage to the Property caused by the Loss. The Insured has exhausted all reasonable means possible to resolve this dispute with the Insurance Company. With no other option, the Insured was constrained to hire legal counsel, incurring additional expenses, and filing of this lawsuit.

### 20.

The Insured has suffered physical damage to the Property in an amount to be determined at trial.

## <u>COUNT I</u>
## BREACH OF CONTRACT

### 21.

The Insured adopt, re-allege, and incorporate the allegations set forth in Paragraphs 1-20 of this Complaint as if fully set forth herein.

### 22.

At all times material hereto, the Insured have satisfied all post-loss obligations to the best of their ability in accordance with the Policy. This includes but is not limited to: timely payment of premiums; timely notice of the claim; and protecting the Property from further damage.

### 23.

The Insurance Company is required to compensate the Insured for all direct physical losses under the terms of the Policy.

### 24.

Despite the Insured's timely written demand that the Insurance Company pay the covered losses, the Insurance Company has frivolously and baselessly failed, to acknowledge that additional payment would be forthcoming, and it has failed to adequately provide coverage under the terms of the Policy. As a result of the foregoing, the Insurance Company has breached the Policy causing further delay in restoring the Property to its pre-loss condition.

### 25.

The Insurance Company has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay the Loss according to the terms of the Policy.

**26.**

The Insurance Company has used the tactic of denying compensation to the Plaintiff for covered losses that were sustained due to the damage. Further, the Insurance Company has used the tactic of denying payment to the Insured to misrepresent the language of the Policy.

**27.**

As a result of the Insurance Company's tactic of denying and delaying the Insured's claim, the Insured has sustained damage to the Property in an amount to be determined at trial. In addition, the Insured has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

**28.**

As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained, and continues to suffer, significant damages.

**29.**

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Insured.

**30.**

**WHEREFORE,** the Insured prays for this Court to enter an award in their favor for compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II
## BAD FAITH

### 31.

The Insured adopt, reallege, and incorporate the allegations set forth in Paragraphs 1-30 of this Complaint as if fully set forth herein.

### 32.

The Insurance Company has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and fair dealing to achieve a proper disposition of the Insured's claim.

### 33.

The Insurance Company has not attempted in good faith to settle the Insured's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for their interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverage at issue. See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. See O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear. See O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them. <u>See</u> O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation. <u>See</u> O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims. <u>See</u> O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action. In the case of claims denials, such denials shall be in writing. <u>See</u> O.C.G.A. § 33-6-34(10).

**34.**

The above and foregoing actions of the Insurance Company give rise to a cause of action for bad faith as the Insurance Company has frivolously and without a reasonable basis refused to pay the Insured's covered Loss within sixty (60) days after the Insured's timely written demand for payment according to O.C.G.A § 33-4-6, (See **Exhibit "B"**).

**35.**

The Insurance Company has frivolously and without a reasonable basis used the tactic of denying compensation to the Insured for a covered Loss. Further, the Insurance Company has frivolously and without a reasonable basis used the tactic of delaying payment to misrepresent the language of the Policy.

**36.**

The Insurance Company's refusal to pay the Insured's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

**37.**

As a result of the Insurance Company's breach of the Policy and continuous refusal to adequately indemnify the Insured, the Insurance Company acted in bad faith. Pursuant to O.C.G.A. § 33-4-6, the Insured is entitled to all damages, whether foreseeable or not, that are a direct result of the Insurance Company's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and the Insured's consultant and expert fees.

**38.**

Pursuant to O.C.G.A. § 33-4-6, the Insurance Company is obligated to pay any amounts owed to the Insured within sixty (60) days of receipt of formal demand and have failed to do so. As a result of that frivolous failure - which was arbitrary, capricious, and without a reasonable basis - the Insurance Company is liable for all amounts due under its respective policy plus fifty percent (50%).

**39.**

Pursuant to O.C.G.A. § 33-4-6, the Insurance Company owed the Insured Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust the Loss fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly. Because the Insurance Company has breached these duties, it is liable to the Insured for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

**40.**

Pursuant to O.C.G.A. § 33-4-6, the Insurance Company breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to fully cover the damages and refused to conduct a reasonable investigation of the Insured's claim. Moreover, such failure was arbitrary, capricious, and without probable cause.

**41.**

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5000, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." The Insured is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, under O.C.G.A. § 33-4-6 for the Insurance Company's unfair claims settlement practices and bad faith refusal to pay the Insured's Loss when it could and should have done so, had it acted fairly and reasonably toward the insured.

## COUNT III
## ATTORNEY'S FEES

**42**.

The Insured adopt, reallege, and incorporate the allegations set forth in Paragraphs 1-41 of this Complaint as if fully set forth herein.

**43.**

The Insurance Company has acted in bad faith, has been stubbornly and maliciously litigious and has caused the Insured unnecessary trouble and expense.

**44.**

Under these circumstances, the Insurance Company is liable for all of the Insured's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14 and O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

**45.**

Plaintiff hereby requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

**46.**

**WHEREFORE,** the Insured request that after due proceedings are had, all appropriate penalties be assessed against the Insurance Company and that the Insured receive any and all damages at law to which it is justly entitled, and thus prays for judgment against the Insurance Company as follows:

a.  That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b.  Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c.  Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated this 12th day of September 2024.

Respectfully submitted,

**YOUR INSURANCE ATTORNEY, PLLC**

*/s/ Brian Braddy*
Brian Braddy
Georgia State Bar No. 967126
Attorney for Plaintiff
260 Peachtree Street
Suite 2200
Atlanta, GA  30303
888-570-5677 (phone)
888-881-1075 (facsimile)



ASI Home Insurance Corp
1 ASI Way
St. Petersburg, FL 33702

## Homeowners Declaration Page

| | |
|---|---|
| Total Policy Premium: | **$736** |
| Policy Number: | **GAA173929** |

**Named Insured:**
TONY LAROD WILSON
2374 CLAPTON CT
JONESBORO, GA 30236

| **Agent:** |
|---|
| Heimer Insurance Services, Inc. |
| 9325 Schoenthal Rd., Suite 2 |
| San Antonio, TX 78266 |

| | |
|---|---|
| **Agent Code:** | 429235 |
| **For Policy Service, Call:** | (210)479-9990 |
| **To File a Claim, Call:** | 866-274-5677 |

**Effective Date of This Transaction:**      1/31/2023

**Activity of This Transaction:**      Renewal

**Residence Premises:**
2374 CLAPTON CT
JONESBORO, GA 30236-6773

**Policy Period:**    From:  01/31/2023  To:  01/31/2024
(At 12:01 AM Standard Time at the residence premises)

**Plan Type:**    HOS

Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated.

| Coverages and Limits of Liability | | Limit | Premium |
|---|---|---|---|
| SECTION I: | A. Dwelling Coverage | $277,000 | 1056.61 |
| | B. Other Structures | $5,540 | Included |
| | C. Personal Property | $138,500 | Included |
| | D. Loss of Use | $55,400 | Included |
| SECTION II: | E. Personal Liability - Each Occurrence | $100,000 | 30.00 |
| | F. Medical Payments to Others - Each Person | $1,000 | 5.00 |

OTHER COVERAGES AND ENDORSEMENTS:

(Printed on the following page)

DEDUCTIBLE:

| All Other Perils: | $1000 |
|---|---|
| Wind & Hail: | $1000 |

**Special Messages:**      **OTHER COVERAGES,  LIMITS AND EXCLUSIONS APPLY - REFER TO YOUR POLICY FOR DETAILS**
                    **THIS POLICY DOES NOT INCLUDE COVERAGE FOR FLOOD LOSSES.**

**Mortgagee:**

**1st  Mortgagee**                                    **2nd Mortgagee**
Carrington Mortgage Services, LLC
ISAOA/ATIMA
PO Box 692408
San Antonio, TX 78269-2408
Loan #3000054274      Escrow: Yes

*David L Pratt*
President

This is a true and certified copy of the original policy issued.

*Tamra George*
Date: 12/13/23 - 03:25pm

☑

| Other Coverages and Endorsements: | Form Number | Limit | Premium |
|---|---|---|---|
| Homeowners Protection Policy - Special | ASI HOS GA 04 21 | | |
| Coverage Explanation for Home Day Care Business | ASI HO NHDB 02 19 | | |
| Limited Fungi, Wet or Dry Rot, or Bacteria Coverage - $5,000/$50,000 | ASI HO GA LF 06 15 | | |
| Secured Subdivision | | | -69.36 |
| Age of Dwelling | | | -311.99 |
| All Other Perils Deductible | | 1000 | Included |
| Wind/Hail Deductible | | 1000 | -0.69 |
| Rate Modification Factor | | -4 | -31.99 |
| Water Backup Coverage | ASI HO WBU 02 19 | 5000 | 20.00 |
| Ordinance or Law | | 27700 | Included |
| Fixed Base Premium | | | 75.00 |
| Personal Prop Replmnt Cost | ASI HO PPRC 05 21 | | 105.66 |
| Building Code | | | -57.57 |
| Accredited Builder | | | -77.85 |
| Do Any Residents Smoke | | | -7.01 |

**Scheduled Items:**

| Category | Description of Property | Value | Premium |
|---|---|---|---|
| | | | |

**Additional Insured:**

**Additional Interest:**

Interest:

Interest:



This is a true and certified copy of the original policy issued.

_Tamra George_

✔ Date: 12/13/23 - 03:25pm

**Rating Information:**

| | | | |
|---|---|---|---|
| Construction Type: | Masonry/Veneer | | |
| Type of Residence: | Single Family | Total Square Feet: | 1,844 |
| Year Built: | 2018 | ASI Territory: | 104 |
| Roof Year: | 2018 | County: | CLAYTON |

**Special Conditions:**

PLEASE READ YOUR POLICY DOCUMENTS CAREFULLY AS SPECIAL CONDITIONS AND EXCLUSIONS APPLY.
THESE INCLUDE, AMONG OTHERS:

    1. LIMITED LIABILITY COVERAGE FOR WATERCRAFT AND RECREATIONAL VEHICLES

    2. NO LIABILITY COVERAGE FOR EXCLUDED ANIMALS

**Notes:**



# Homeowners Protection Policy Special



Underwritten by:
ASI Home Insurance Corp.

# YOUR HOMEOWNERS POLICY

## TABLE OF CONTENTS

**INSURANCE AGREEMENT** ..................................................................................................3

**DEDUCTIBLE**..........................................................................................................................3

**SECTION I - PROPERTY COVERAGES**
    PROPERTY COVERAGES ..................................................................................................3
        Coverage A – Dwelling..............................................................................................3
        Coverage B – Other Structures .................................................................................3
        Coverage A And B – Special Limits Of Liability ......................................................4
        Coverage C – Personal Property ...............................................................................4
            Special Limits Of Liability ................................................................................4
        Coverage D – Loss Of Use .........................................................................................6
        Additional Coverages.................................................................................................7
    PERILS INSURED AGAINST .............................................................................................10
        Coverage A – Dwelling, Coverage B – Other Structures And Coverage C – Personal Property ...............10
        Coverage A – Dwelling And Coverage B – Other Structures ..................................13
        Coverage C – Personal Property .............................................................................13
    EXCLUSIONS .....................................................................................................................14
    CONDITIONS ......................................................................................................................16
        What Must Be Done After A Loss .............................................................................16
        How A Loss Will Be Settled ......................................................................................17

**SECTION II - LIABILITY COVERAGES**
    LIABILITY COVERAGES ....................................................................................................20
        Coverage E – Personal Liability ..............................................................................20
        Coverage F – Medical Payments To Others.............................................................20
    EXCLUSIONS .....................................................................................................................21
    ADDITIONAL COVERAGES................................................................................................23
    CONDITIONS ......................................................................................................................25
        What Must Be Done After A Loss .............................................................................25
        Duties Of An Injured Person – Coverage F – Medical Payments To Others ...........25

**SECTION I AND II – CONDITIONS** .....................................................................................26

**DEFINITIONS** ........................................................................................................................28

**PLEASE READ THIS POLICY CAREFULLY.**
**This is a legal contract between You and Us.  It contains certain limitations and exclusions.**

---

## INSURANCE AGREEMENT

---

In reliance on the information you have provided to us, we agree to provide the insurance coverages indicated on the Policy Declarations pursuant to the policy terms and conditions.  In return, you must pay the premium when due, comply with the policy terms and conditions, and immediately inform us of any change of use or occupancy of the "residence premises".

If your initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to us by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at our option, be deemed void from its inception. This means we will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by us to present the remittance for payment more than once shall not affect our right to void this policy.

---

## DEDUCTIBLE

---

Unless otherwise noted in this policy, all losses covered under Section I are subject to the applicable deductible amount shown in the Declarations.

---

## SECTION I – PROPERTY COVERAGES

---

## COVERAGE A – DWELLING

**Covered Property**

We cover:

1. The dwelling on the "residence premises", used mainly as your private residence, shown on the Declarations, including attached structures, other than fences, and attached wall-to-wall carpeting if damage to the dwelling is caused by a covered loss.

2. Materials and supplies located on or adjacent to the "residence premises" used in the construction, alteration or repair of the dwelling or other structures on the "residence premises".

3. In-ground swimming pools including related permanently installed equipment such as pumps and filters.

We do not cover land, including land on which the dwelling is located.

## COVERAGE B – OTHER STRUCTURES

**Covered Property**

We cover other structures on the "residence premises" separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection, and fences are considered other structures.  Docks, whether removable or not, are also considered other structures.

We do not cover:

1. Other structures:

   a. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   b. Used in whole or in part for "business" purposes; or

   c. Used to store "business" property.  However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that

---

*Copyright, American Strategic Insurance Corp., 2015*

"business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

2.  Land, including land on which the other structures are located.

The limit of liability for this coverage will not be more than the limit of liability on the declaration page for Coverage B.  Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE A AND B – SPECIAL LIMITS OF LIABILITY

**Cosmetic And Aesthetic Damage To Floors**

The total limit of liability for Coverages A and B combined is $10,000 per policy term for cosmetic and aesthetic damages to floors, resulting from a covered cause of loss.

1.  Cosmetic or aesthetic damage includes, but is not limited to, chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

2.  This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

3.  This limit does not increase the Coverage A or Coverage B limits of liability shown on the declaration page.

4.  This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described for Coverage C – Personal Property.

**Damage To Siding, Roofing And/Or Windows**

In the event of damage to siding, roofing and/or windows of the covered dwelling and other structures at the "residence premises", we will reimburse you up to 2% of the limit of liability for Coverage A for the cost you incur to replace any undamaged siding, soffit, fascia, roofing material and/or windows of like kind and quality to match those materials that were used to repair or replace the property damaged as a result of a covered peril.

## COVERAGE C – PERSONAL PROPERTY

**Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world.  At your request, we will cover personal property, which is not excluded elsewhere in this policy, that is owned by:

1.  Others while the property is on the part of the "residence premises" occupied by an "insured"; or

2.  A temporary guest or a "residence employee", while the property is in any residence occupied by an "insured".

**Limit For Property At Storage Facilities Or Other Residences**

We cover personal property that is located in a storage facility or that is usually located at an "insured's" residence that is not the "residence premises" listed in this policy for up to 10% of the limit of liability for Coverage C, or $1,000, whichever is greater.  This limitation does not apply to personal property:

1.  Moved from the "residence premises" because the "residence premises" is being repaired, renovated or rebuilt and is unfit to live in or store property in; or

2.  In a newly acquired principal residence for the first 30 days from the time you begin to move your property there.

**Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category.  Additional coverage may apply if purchased and provided elsewhere in this policy.  These special limits do not increase the Coverage C limit of liability.

1.  We will pay no more than $250 for the following category of property:

a.  Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum

other than platinumware, coins, medals, scrip, stored value cards and smart cards.

2. We will pay no more than $1,000 for each of the following categories of property:

a. Art glass windows and other works of art such as, but not limited to paintings, statuary (including but not limited to Hummels), marbles, bronzes, porcelains, rare glass, and bric-a-brac.

b. Trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, and sports and entertainment memorabilia, whether or not they are part of a collection.

3. We will pay no more than $1,500 for each of the following categories of property:

a. Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists. This limit includes the cost to research, replace or restore the information from the lost or damaged material.

b. Watercraft of all types, including their furnishings, equipment and outboard engines or motors.

c. Trailers or semitrailers of all types.

d. Loss by theft of jewelry, watches, furs, precious and semiprecious stones.

e. Electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **e.**

f. Electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **f.**

g. Property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **3.e.** and **3.f.** above.

4. We will pay no more than $2,000 for any individual item or set of electronic equipment caused directly or indirectly by theft or vandalism with a maximum total limit of 10% of the Coverage C limit for all electronic equipment. Electronic equipment includes, but is not limited to:

a. Televisions, audio, video and other electronic media playing and/or recording devices.

b. Audio and video media storage devices such as DVDs, records, CDs, and tapes.

c. Cameras, projectors and related equipment.

d. Gaming systems including their games and accessories.

5. We will pay no more than $2,500 for each of the following categories of property:

a. Loss by theft of firearms, related equipment, and ammunition.

b. Loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

c. Property used primarily for "business" purposes that is located on the "residence premises" at the time of loss.

d. Loss by theft of personal computers, including but not limited to tablet, laptop and desktop computers, accessories, and related peripherals such as disk drives, printers, and commercial software. We will not pay for other software or lost data.

6. We will pay no more than $5,000 for the following category of property:

   a. Loss by theft of tools.

Additionally, we will pay no more than 10% of the total Coverage C amount for loss of or to any one item of unscheduled personal property.

**Property Not Covered**

We do not cover:

1. Personal property separately described and specifically insured in this or any other insurance policy;

2. Any animals, including but not limited to mammals, reptiles, birds or fish;

3. "Motor vehicles" and all other motorized land conveyances. This includes, while such property is in or upon the "motor vehicle", the following:

   a. Accessories, equipment and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of sound or picture which is operated by power from the electrical system of motor vehicle or all other land conveyances. This includes accessories or antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

   We do cover vehicles or conveyances not required to be registered which are:

   (1) Used solely to service an "insured's" residence; or

   (2) Designed for assisting the handicapped;

4. Aircraft and Aircraft Parts. Aircraft means any contrivance used or designed for flight. Aircraft does not include model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders, tenants and anyone who regularly resides at the insured premises who is not an "insured";

6. Property away from the "residence premises" in a location regularly rented or held for rental to others by an "insured";

7. Property away from the "residence premises" and rented or held for rental to others;

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing or storage tapes, devices, records, discs, wires, software media, computers or related equipment.

   However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market. The most we will pay is the limit of liability for "business" property;

9. Credit cards, fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in Credit Card, Fund Transfer Card, Forgery And Counterfeit Money under Section I – Property Coverages;

10. Water or steam; or

11. Virtual currency, cryptocurrency or any currency which does not have legal tender status recognized by the United States Treasury Department.

## COVERAGE D – LOSS OF USE

The Coverage D limit of liability shown in the Declarations is the total limit of liability for all coverages within Coverage D. This limit applies on an aggregate basis for Additional Living Expense and Civil Authority Prohibits Use.

**Additional Living Expense**

If a loss by a Peril Insured Against causes the "residence premises" to become uninhabitable, we will cover any necessary increase in living expenses you incur to maintain your normal household standard of living.

|  | Payment will be for the shortest time required to repair or replace the premises or permanently settle your household elsewhere. |
|---|---|
| **Civil Authority Prohibits Use** | If a civil authority prohibits your use of the "residence premises" as a result of direct damage to a neighboring premise by a Peril Insured Against, we will cover, pursuant to the above provisions, any Additional Living Expense loss that you incur.  Coverage is for a period of no more than two weeks while use is prohibited. |
| **Loss Not Covered** | We do not cover loss due to cancellation of a lease or agreement. |

The periods of time under Additional Living Expense and Civil Authority Prohibits Use above are not limited by expiration of this policy.


# ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

| **Debris Removal** | We will pay the reasonable expense you incur for the removal of: |
|---|---|
|  | 1.   Debris of covered property if the loss is from a covered loss; or |
|  | 2.   Ash, dust or particles from a volcanic eruption that has caused direct loss to covered property. |
|  | If the amount we owe for the actual damage to the property plus the reasonable debris removal expense exceeds the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.  This coverage does not change the limit of liability that applies to the damaged covered property. |
|  | We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of: |
|  | 1.   Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or |
|  | 2.   A neighbor's tree(s) felled by a Peril Insured Against; |
|  | provided the tree(s): |
|  | a.   Damage(s) a covered structure; or |
|  | b.   Does not damage a covered structure, but: |
|  | (1)   Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or |
|  | (2)   Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building. |
|  | The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees.  We will pay no more than $500 of this limit for the removal of any one tree. |
| **Emergency Repairs** | If a Peril Insured Against causes damage to covered property, we will pay the reasonable cost you incur for emergency repairs or measures that are necessary to protect that covered property from further damage. This coverage does not increase the limit of liability that applies to the covered property or relieve you of your duties described in What Must Be Done After A Loss. |
| **Trees, Shrubs And Other Plants** | We cover outdoor trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following perils: |
|  | 1.   Fire or Lightning; |
|  | 2.   Explosion; |
|  | 3.   Riot or Civil Commotion; |

4. Aircraft;

5. Vehicles not owned or operated by a resident of the "residence premises";

6. Vandalism or Malicious Mischief; or

7. Theft.

Property grown for "business" purposes is not covered.

The limit of insurance, including debris removal, for any one loss will not exceed:

1. 5% of the limit of liability that applies to Coverage A for all trees, shrubs, plants or lawns; and

2. No more than $500 of this limit for any one tree, shrub or plant.

This coverage is additional insurance.

**Fire Department Service Charge**

We will pay up to $500 for incurred service fees charged by a fire department when called to protect covered property from a covered loss. We will pay no more than $500 in fees resulting from any one service call. This coverage is additional insurance. No deductible applies to this coverage.

**Property Removed**

We cover accidental direct physical loss to covered property while being removed from a premises that is endangered by a Peril Insured Against. This coverage also applies to the property for up to 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**Collapse**

This Additional Coverage applies to property covered under Coverages A and B. Collapse means an abrupt falling down or falling into pieces of a building or part of a building that:

1. Results in the "residence premises" being unable to be occupied for its current intended purpose; and

2. Is caused by one or more of the following:

   a. A Peril Insured Against under Coverages A and B;

   b. Hidden decay of a structural member of the building, unless the presence of such decay is known to an "insured" prior to collapse;

   c. Hidden insect or vermin damage to a structural member of the building, unless the presence of such damage is known to an "insured" prior to collapse;

   d. Weight of contents, equipment, animals or people;

   e. Weight of snow, ice, rain or sleet which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse. A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building, unless the building can no longer be occupied for its intended purpose.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground  pipe,  flue,  drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **a.** through **f.** above, unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not change the limit of liability that applies to the damaged covered property.

**Credit Card, Fund Transfer Card, Forgery And Counterfeit Money**

We will pay up to $1,000 for:

1. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

2. Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

3. Loss to an "insured" as a result of forgery or alteration of a check or negotiable instrument; and

**4.** Loss to an "insured" as a result of good faith acceptance of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts which are committed by any one person or group of persons or which involved or implicated any one person or group of persons is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

If a suit is brought against an "insured" for liability under **1.** or **2.** above, we will provide a defense at our expense by counsel of our choice.

We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **3.** above.

We do not cover:

**1.** Use of a credit card or fund transfer card:

    **a.** By a resident of your household;

    **b.** By a person who has been entrusted with either type of card; or

    **c.** If an "insured" has not complied with all terms and conditions under which the cards are issued; or

**2.** Loss arising out of "business" use or dishonesty of an "insured".

**Loss Assessment**

We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner of the "residence premises", by an association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against, subject to all provisions of this policy.

This coverage does not apply to assessments made as a result of damage caused by:

**1.** Earthquake; or

**2.** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

**Ordinance Or Law**

We will pay, up to 10% of the limit of liability that applies to Coverage A, for the increased costs you incur due solely to the enforcement of an ordinance or law which requires or regulates:

**1.** The construction, demolition, or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**2.** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**3.** The modification, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, modification, repair or replacement as stated in the Ordinance Or Law Paragraph and Subparagraphs **1.** through **3.** above.

The ordinance or law must have been in effect at the time the covered loss occurs.

We do not cover:

**1.** The loss in value to any covered building or other structure due to the requirements of any

ordinance or law;

2.  Any increase in costs attributable to any other factors; or

3.  The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled reconditioned or reclaimed.

Section I – Exclusion, Ordinance Or Law does not apply to the extent coverage is provided under this Additional Coverage.

This coverage is additional insurance.

**Breakage Of Glass Or Safety Glazing Material**

We cover:

1.  The breakage of glass or safety glazing material which is part of a building on the "residence premises", storm door or storm window; and

2.  Direct physical loss to covered personal property caused solely by the breakage of glass or safety glazing material which is part of a building on the "residence premises", storm door or storm window.

This peril does not include loss on the "residence premises" if the dwelling has been "vacant" or "unoccupied" for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement. A dwelling being constructed is not considered "vacant" or "unoccupied".

This coverage does not increase the limit of liability that applies to the damaged covered property.

**Pet Injury Coverage**

If an "insured's" dog or cat sustains injury or death while on the "residence premises" and as a result of a covered loss, we will provide:

1.  Up to $1,000 for reasonable and customary veterinary fees incurred by an "insured" if the dog or cat is injured while on the "residence premises" and as a result of a covered loss; or

2.  A $1,000 death benefit if an "insured's" dog or cat dies while on the "residence premises" and as a result of a covered loss, less any payment we made toward veterinary expenses.

$1,000 is the most we will pay for the total of all loss or costs payable under this Additional Coverage, regardless of the number of dogs or cats involved.

**Property Not Covered**, **2.**, does not apply to the extent coverage is provided under this Additional Coverage.

This coverage is additional insurance. No deductible applies to this coverage.

---

## SECTION I – PERILS INSURED AGAINST

---

## COVERAGE A – DWELLING, COVERAGE B – OTHER STRUCTURES AND COVERAGE C – PERSONAL PROPERTY

We insure for sudden and accidental direct physical loss to property described in Coverages A, B and C.

We do not insure for loss under Coverages A, B, and C:

1.  Excluded under Section I – Exclusions;

2.  Caused by:

    a.  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if

you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(1)** Swimming pool, hot tub, or spa, including their filtration and circulation system;

**(2)** Fence, pavement, patio;

**(3)** Foundation, retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(4)** Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Constant or repeated seepage or leakage of water or steam or the presence of condensation or humidity, moisture or vapor, over a period of 14 or more days from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance. In the event this exclusion applies, we will not pay for any damages sustained starting from the first day the seepage or leakage of water or steam or the presence of condensation or humidity, moisture or vapor began.

This exclusion applies unless such seepage or leakage of water or steam or the presence of condensation or humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure;

**e.** Wear and tear, marring, or deterioration;

**f.** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**g.** Smog, rust or other corrosion;

**h.** Smoke from agricultural smudging or industrial operations;

**i.** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by one of the following Peril Insured Against:

**(1)** Fire Or Lightning

**(2)** Windstorm Or Hail

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**(3)** Explosion

**(4)** Riot Or Civil Commotion

**(5)** Aircraft

This peril includes self-propelled missiles and spacecraft.

**(6)** Vehicles

**(a)** This peril means accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

**(b)** This peril includes loss caused by:

**i.** The impact of a vehicle;

**ii.** An object propelled from the tire or body of a vehicle;

**iii.** The upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

**iv.** A vehicle door or trunk lid being closed on personal property.

**(c)** This peril does not include loss:

      **i.**   To personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      **ii.**   Caused by shifting of the load being carried in or on a vehicle; or

      **iii.**   To the vehicle itself unless the vehicle is property covered under Coverage C – Personal Property and the loss is caused by the weight, force, power, or movement of another vehicle.

**(7)**  Smoke

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**(8)**  Vandalism Or Malicious Mischief

This peril does not include loss to property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" or "unoccupied" for more than 60 consecutive days immediately before the loss.  A dwelling being constructed is not considered "vacant" or "unoccupied";

**(9)**  Falling Objects

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object.  Damage to the falling object itself is not included.

**(10)**  Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**(11)**  Accidental Discharge Or Overflow Of Water Or Steam

  **(a)**  This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

  **(b)**  This peril does not include loss:

      **i.**   To the system or appliance from which the water or steam escaped;

      **ii.**   Caused by or resulting from freezing except as provided in **(13)** Freezing below;

      **iii.**   On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      **iv.**   Caused by constant or repeated seepage or leakage of water or steam or the presence of condensation or humidity, moisture or vapor, over a period of 14 or more days from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance. In the event this exclusion applies, we will not pay for any damages sustained starting from the first day the seepage or leakage of water or steam or the presence of condensation or humidity, moisture or vapor began.

      However, we do insure for loss that is not known, or could not have been known, to any "insured" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam.

  **(c)**  In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**(12)**  Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**(13)**  Freezing

  **(a)**  This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      **i.**   This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      **ii.**   Shut off the water supply and drain all systems and appliances of water.

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  **(b)**  In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**(14)**  Sudden And Accidental Damage From Artificially Generated Electronic Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**(15)** Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**j.**   Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**k.**   Birds, vermin, rodents, or insects. Vermin include, but are not limited to, armadillos, bats, coyotes, lizards, opossums, raccoons, skunks, snails, or slugs;

**l.**   Nesting or infestation, or discharge or release of waste products or secretions, by any animals;

**m.**   Animals owned or kept by an "insured"; or

**n.**   Pressure from or presence of tree, shrub or plant roots.

**Exception to 2.e. through 2.n.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises", including the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance.  However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusions, Water Damage, Paragraphs **1.** and **4.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **2.d.** through **2.n.** above.

Under **2.** above, any ensuing loss to property described in Coverages A, B and C, not excluded by any other provision in this policy is covered.


# COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES


We insure for sudden and accidental direct physical loss to property described in Coverages A and B.

We do not insure for loss under Coverages A and B:

**1.**   Caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" or "unoccupied" for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered "vacant" or "unoccupied";

**2.**   Involving collapse, other than as provided under Section I – Property Coverages, Additional Coverages, Collapse.  However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.


# COVERAGE C – PERSONAL PROPERTY


We insure for sudden and accidental direct physical loss to property described in Coverages C.

We do not insure for loss under Coverages C caused by:

**1.**   Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches bronzes, cameras and photographic lenses.

However, there is coverage for breakage of the property by or resulting from:

**a.**   Fire, lightning, windstorm, hail;

**b.**   Smoke, other than smoke from agricultural smudging or industrial operations;

**c.**   Explosion, riot, civil commotion;

    **d.** Aircraft, vehicles, vandalism and malicious mischief;

    **e.** Collapse of a building or any part of a building;

    **f.** Water not otherwise excluded;

    **g.** Theft or attempted theft; or

    **h.** Sudden and accidental tearing apart, cracking, burning or bulging of:

        **(1)** A steam or hot water heating system;

        **(2)** An air conditioning or automatic fire protective sprinkler system; or

        **(3)** An appliance for heating water;

**2.** Dampness, of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

**3.** Refinishing, renovating or repairing property other than watches, jewelry and furs;

**4.** Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings equipment and out board engines or motors;

**5.** Destruction, confiscation or seizure by order of any government or public authority;

**6.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.  However, any ensuing loss to property described in Coverage C not precluded by any other provision in this policy is covered; or

**7.** Mysterious disappearance, losing or misplacement.

---

# SECTION I – EXCLUSIONS

---

We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

| | |
|---|---|
| **Ordinance Or Law** | Ordinance Or Law means enforcement of any ordinance or law: |
| |   **1.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of building or other structure, including removal of any resulting debris.  This Paragraph does not apply to the amount of coverage that may be provided under Section I – Property Coverages, Additional Coverages, Ordinance Or Law. |
| |   **2.** The requirements of which result in a loss in value to property; or |
| |   **3.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants. |
| |     Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed. |
| | This Exclusion, Ordinance Or Law, applies whether or not the property has been physically damaged. |
| **Earth Movement** | Earth Movement means any sinking, rising, shifting, expansion or contraction of earth, whether the cause is natural or not.  Earth Movement includes but is not limited to earthquake, land shock waves, tremors, landslide, mudslide, mudflow, subsidence, sinkhole, erosion, hydraulic fracturing and volcanic explosion or lava flow, except as provided in the Peril Insured Against for Volcanic Eruption. |
| | This Exclusion does not apply to loss by theft or an ensuing direct loss by fire or explosion. |
| **Water Damage** | Water Damage means: |
| |   **1.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, whether or not driven by wind, including storm surge; |
| |   **2.** Water or any other substance that backs up through sewers or drains; |
| |   **3.** Water or any other substance that overflows from a sump pump, sump pump well or other |

system designed for the removal of subsurface water which is drained from a foundation area of a structure; or

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes but is not limited to water or any other substance which exerts pressure on or flows, seeps or leaks through any part of the "residence premises".

This exclusion applies to, but is not limited to, escape, overflow or discharge, of water or any other substance from a dam, levee, seawall or any other boundary or containment system.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Coverage C on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

**Power Interruption**

Power Interruption means the failure of power or other utility service that occurs off the "residence premises". However, if the failure results in accidental direct physical loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**Neglect**

Neglect means neglect of any "insured" to use all reasonable means to protect and preserve property at and after the time of a loss. Neglect by any "insured" excludes coverage for all "insureds".

**War**

War includes the following and any consequence of any of the following:

1. Declared war, undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, discharge of a nuclear weapon even if accidental; or

2. Destruction, seizure or use for a military purpose.

**Nuclear Hazard**

Nuclear Hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by a nuclear hazard will not be considered loss caused by fire, explosion, or smoke. However, direct loss by fire resulting from a nuclear hazard is covered.

**Intentional Loss**

Intentional Loss means loss resulting from any act performed by, at the direction of, or in conspiracy with any "insured", with the intent to cause a loss or which may reasonably have been expected to result in a loss. Coverage is excluded for all insureds, regardless of whether all "insureds" committed or conspired to commit the act which caused the intentional loss.

However, this exclusion will not apply to deny payment to an innocent co-"insured" if the loss arose out of family violence and is caused by the intentional act of an "insured" against whom a family violence complaint is brought for the act causing the loss.

If we pay a claim pursuant to this Intentional Loss exclusion, our payment to the innocent co-"insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

**Governmental Taking Or Destruction**

Governmental Action means the taking or destruction of property described in Coverage A, B or C by order of any governmental or public authority. However, coverage applies for Governmental Action taken to prevent the spread of fire at the time of a covered fire loss.

**Illegal Or Criminal Acts**

Illegal or Criminal Acts means any illegal or criminal act performed by, at the direction of, or in conspiracy with any "insured", that results in loss to covered property. This exclusion applies regardless of whether the "insured" is charged with a crime.

**Diminished Value**

We do not cover any loss due to diminished value of any property covered under this policy.

| | |
|---|---|
| **Existing Damage** | We do not cover: |

1.  Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

2.  Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

We do not insure for loss to property described in Coverages A and B caused by any of the following:

1.  Weather conditions.  However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Section I – Exclusions above to produce the loss.

2.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3.  Faulty, inadequate or defective:

    a.  Planning, zoning, development, surveying, siting;

    b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c.  Materials used in repair, construction, renovation or remodeling; or

    d.  Maintenance;

    of part or all of any property whether on or off the "residence premises".

However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

---

## SECTION I – CONDITIONS

---

| | |
|---|---|
| **What Must Be Done After A Loss** | In the event of a loss to which coverage may apply, the following duties must be performed either by you, an "insured" seeking coverage, or a representative of either: |

1.  Give us immediate notice. When the loss is caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss.

2.  Notify the police of loss by theft or vandalism or malicious mischief and:

    a.  File a police report describing all items stolen;

    b.  Submit the filed report to us; and

    c.  Cooperate with the police in their investigation;

3.  Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in the Additional Coverage for Credit Card, Fund Transfer Card, Forgery And Counterfeit Money;

4.  Protect the property from further damage.  If repairs to the property are required, you must:

    a.  Make reasonable and necessary repairs to protect the property; and

    b.  Keep an accurate record of repair expenses;

5.  Cooperate with us in the investigation and processing of a claim;

6.  Prepare a written inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss for each item.  Attach all bills, receipts and related documents that verify or support the information stated in the inventory;

7.  As often as we reasonably require:

    a.  Show the damaged property;

    b.  Provide us with records and documents we request and permit us to make copies; and

    c.  You, any "insured" and anyone you hire in connection with your claim must:

        (1)  Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        (2)  Sign the same.

        Representations made by any of the preceding persons who appear in examinations under

oath or recorded statements will be deemed to be your representations.

8.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a.  The time and cause of loss;

    b.  The interests of all "insureds" and others in the property involved, and any encumbrances on the property;

    c.  Other insurance which may cover the loss;

    d.  Changes in title or occupancy of the property during the term of this policy;

    e.  Specifications of damaged buildings and detailed repair estimates;

    f.  The inventory of damaged personal property described in **6.** above;

    g.  Receipts for additional living expenses incurred; and

    h.  Evidence or affidavit that supports a claim under the Additional Coverage for Credit Card, Fund Transfer Card, Forgery And Counterfeit Money, stating the amount and cause of loss.

We have no duty to provide coverage under this policy if there is a failure to comply with the above duties.

**How A Loss Will Be Settled**

We will not pay for any compensation for actual or perceived reduction in the market value of any property. Covered property losses are settled as follows:

1.  Property of the following types:

    a.  Personal property;

    b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    c.  Structures that are not buildings;

    at "actual cash value" at the time of loss but not more than the amount required to repair or replace.

2.  Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

    a.  We will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1) The limit of liability under this policy that applies to the building;

        (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        (3) The necessary amount actually spent to repair or replace the damaged building.

        If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

    b.  We will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** above.

        However, if the cost to repair or replace the damage is both:

        (1) Less than 5% of the amount of insurance in this policy on the building; and

        (2) Less than $2,500;

        we will settle the loss as noted in **2.a.** above whether or not actual repair or replacement is complete.

    c.  We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except to the extent that coverage for these increased costs may be provided under Section I – Property Coverages, Additional Coverages, Ordinance Or Law.

    d.  You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an "actual cash value" basis.  You may then make claim for any additional liability according to the provisions of this Condition, How A Loss Will Be Settled, provided you notify us of your intent to do so within 180 days after the date of loss.

**Loss Payment**

We will adjust all losses with you.  We will pay you unless some other person is named in the policy or is legally entitled to receive payment.  We will pay within 60 days after:

1. We reach an agreement with you;
2. A final judgment is entered, provided that judgment is not appealed; or
3. An appraisal award is filed, provided that appraisal award is not contested.

**Our Options**

We have the option to repair or replace any part of the damaged property with material or property of like kind and quality.  We may also take all or part of the damaged property at the agreed or appraised value.

**Insurable Interest**

In the event of a covered loss, we will not be liable to an "insured" for more than the amount of such "insured's" interest in the covered property at the time of loss.

**Loss To A Pair Or Set**

In the event of a covered loss to a pair or set, we may elect to:

1. Repair or replace any part of the pair or set to restore it to its "actual cash value" before the loss; or
2. Pay the difference in the "actual cash value" of the pair or set before and after the loss.

**Appraisal**

If you and we fail to agree on the amount of loss, an appraisal of the loss may take place. However, both parties must agree to the appraisal and once agreed, the appraisal process cannot be withdrawn.

If appraisal is demanded by either party, each will choose a competent, disinterested, and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.

If the two appraisers cannot agree upon an umpire within 15 days of both parties naming their appraiser, then either party may seek selection of an umpire by filing a petition in a court of record in the county and jurisdiction where the "residence premises" is located, provided the requesting party provides the non-requesting party with notice at least 15 days prior to any hearing via certified mail.

An umpire must be competent, disinterested, and impartial.

All written demands for appraisal and notice of hearings to us must be sent to the address for the insurer listed on the Declarations Page.

The appraisers will separately appraise the amount of the loss.  If the appraisers submit a signed written report of an agreement to us that itemizes all items or elements of loss and delineates the amount for each applicable coverage in the policy, in both "actual cash value" and replacement cost value, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire and the umpire will generate a proposed written report as set forth above.  A written report, as set forth above, agreed to and signed by any two will set the amount of loss as the appraisal award.

Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

Any decision rendered by this Appraisal provision is not binding on either party.

If there is an appraisal award, we will still retain our right to apply any applicable policy terms, limits, deductibles, and conditions.  Suit cannot be filed against us during the appraisal process.  If suit was filed against us prior to the demand of appraisal, suit will be held in abatement until the execution of an appraisal award.

**Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or
2. A service agreement, this insurance is excess over any amounts payable under any such agreement.  Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

*Copyright, American Strategic Insurance Corp., 2015*

**ASI HOS GA 04 21**

**Legal Action Against Us**

No legal action can be brought against us unless there has been full compliance with all of the terms of this policy and the legal action is filed within one year after the date of loss. For losses caused by the peril of fire, however, no legal action can be brought against us unless there has been full compliance with all of the terms of this policy and the legal action is filed within two years after the date of loss.

**Abandonment Of Property**

We have no liability for and no duty to accept any property abandoned by an "insured".

**Mortgage Clause**

The word mortgagee includes a trustee pursuant to a deed of trust. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

2. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

3. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **2.** and **7.** of What Must Be Done After A Loss, Appraisal, Legal Action Against Us, and the last paragraph of Loss Payment under Section I – Conditions also apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for nonpayment of premium, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

If we pay the mortgagee for any loss and deny payment to you:

1. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

2. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

We provide coverage to no mortgagee or its representatives under this policy if, whether before or after a loss, a mortgagee or its representatives has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee. This provision applies regardless of any other provision of this policy.

**Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. You may choose to take possession of the recovered property or it will become our property. If you choose to take possession of the recovered property, the loss payment will be adjusted based on the amount you received for the recovered property.

**Policy Period**

This policy applies only to loss which occurs during the policy period.

| | |
|---|---|
| **Concealment Or Fraud** | We provide coverage to no "insureds" under this policy if, whether before or after a loss, any "insured" has: |
| | 1. Concealed or misrepresented any material fact or circumstance; |
| | 2. Engaged in fraudulent conduct; or |
| | 3. Made false statements; |
| | relating to this insurance. |
| **Venue** | This policy and any performance there under shall be construed with and governed by the laws of the State of Georgia. |
| **Assignment Of Claim Benefits** | No assignment of claim benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all "insureds", all additional insureds, and all mortgagee(s) named in this policy. |

---

# SECTION II – LIABILITY COVERAGES

---

## COVERAGE E – PERSONAL LIABILITY

If a claim or lawsuit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and
2. Provide a legal defense at our expense by counsel of our choice.

We may, at our discretion, investigate or settle any claim or lawsuit against an "insured". Our duty to pay or defend ends when the amount we pay for damages resulting from an "occurrence" equals our limit of liability.

## COVERAGE F – MEDICAL PAYMENTS TO OTHERS

In the event of "bodily injury" due to an "occurrence", we will pay necessary medical expenses incurred within three years from the date of the "occurrence". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to any "insured". This coverage applies only:

1. To persons on the "insured location" with the permission of an "insured"; or
2. To persons off the "insured location", if the "bodily injury" is caused by:
   a. A condition on the "insured location" or the ways immediately adjoining;
   b. The activities of an "insured";
   c. A "residence employee" in the course of the "residence employee's" employment by an "insured"; or
   d. An animal to which coverage applies under this policy and that is owned by or in the care of an "insured" at the time of the "occurrence".

---

## SECTION II – EXCLUSIONS

---

## EXCLUSIONS APPLYING TO COVERAGE E

Coverage E does not apply to any of the following:

| | |
|---|---|
| **Loss Assessment** | Liability for any loss assessment charged against you as a member of an association or community of property owners. |
| **Contractual Liability** | Liability assumed by an "insured" under any contract or agreement. |
| **Property Owned** | "Property damage" to property owned by an "insured" or any other resident of the "insured location". |
| **Property Rented, Occupied, Used Or In Care Of** | "Property damage" to property rented to, occupied by, used by or in the care of an "insured".  This exclusion does not apply to "property damage" resulting from fire, smoke or explosion. |
| **Liability Insured By A Nuclear Energy Liability Policy** | "Bodily injury" or "property damage" for which an "insured" under this policy is also an insured under a nuclear energy liability policy or would be an insured under such a policy but for the exhaustion of its limit of liability.  A nuclear energy liability policy is a policy issued by the Nuclear Energy Liability Insurance Association, the Mutual Atomic Energy Liability Underwriters, the Nuclear Insurance Association of Canada, or any of their successors. |
| **"Bodily Injury" To Any "Insured"** | "Bodily injury" to any "insured" as defined in the Definitions. |
| | This exclusion also applies to any claim or lawsuit brought against any "insured" to repay or share damages with another person who may be obligated to pay damages because of "bodily injury" to an "insured". |

## EXCLUSIONS APPLYING TO COVERAGE F

Coverage F does not apply to any of the following types of "bodily injury":

| | |
|---|---|
| **"Residence Employee" Off Insured Location** | "Bodily injury" to a "residence employee" if the "bodily injury" occurs off the "insured location" and does not arise out of or in the course of the "residence employee's" employment by an "insured". |
| **Nuclear Reaction, Radiation, Or Contamination** | "Bodily injury" from any nuclear reaction, nuclear radiation, radioactive contamination, (all whether controlled or uncontrolled or however caused) or any consequence of any of these. |
| **"Bodily Injury" To Residents** | "Bodily injury" to any person regularly residing at the "insured location". This exclusion does not apply to a "residence employee" of an "insured". |

## EXCLUSIONS APPLYING TO COVERAGES E AND F

Coverages E and F do not apply to any of the following:

| | |
|---|---|
| **"Motor Vehicle", "Aircraft", And "Watercraft" Liability** | We do not cover liability for "bodily injury" or "property damage" arising out of the: |

1. Ownership, maintenance, occupancy, operation, use, loading or unloading of a "motor vehicle", "aircraft", or "watercraft";
2. Entrustment of a "motor vehicle", "aircraft", or "watercraft" by an "insured" to any person;
3. Failure to supervise or negligent supervision of any person involving a "motor vehicle", "aircraft", or "watercraft" by an "insured"; or
4. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a "motor vehicle", "aircraft", or "watercraft".

This exclusion does not apply to "watercraft" liability if, at the time of the "occurrence", the watercraft:

1. Is being stored;
2. Is a sailing vessel that is less than 26 feet in overall length;
3. Has inboard or inboard-outdrive engine or motor power of no more than 50 horsepower; or
4. Is powered by one or more outboard motors with cumulative power of no more than 25 horsepower;

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

| | |
|---|---|
| **Expected Or Intended Injury** | "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage" is of a different kind, quality or degree than initially expected or intended or is sustained by a different person, entity, real or personal property, than initially expected or intended.<br><br>However, this exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property. |

| | |
|---|---|
| **"Business"** | "Bodily injury" or "property damage" arising out of or in connection with: |

1. A "business" engaged in by an "insured" or conducted from an "insured location"; or
2. The rental or holding for rental of any part of the "insured location" by an "insured", regardless of the total annual compensation.

However, this exclusion does not apply to:

1. The rental or holding for rental of part of the "residence premises" for sole use as a residence to no more than two roomers or boarders, if disclosed on the application; or
2. An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

| | |
|---|---|
| **Professional Services** | "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services. |

| | |
|---|---|
| **"Bodily Injury" To A Person Whom You Must Or Do Provide Benefits** | "Bodily injury" to any person for whom an "insured" is required to provide or voluntarily provides benefits under any workers' compensation law, non-occupational disability law, or occupational disease law. |

| | |
|---|---|
| **Loss On An "Insured's" Premises That Is Not An "Insured Location"** | "Bodily injury" or "property damage" arising out of a premises: |

1. Owned by an "insured";
2. Rented to an "insured"; or
3. Rented to others by an "insured";

that is not an "insured location".

*Copyright, American Strategic Insurance Corp., 2015*    **ASI HOS GA 04 21**

| | |
|---|---|
| **War** | "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following: |

1.  Declared war, undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, discharge of a nuclear weapon even if accidental; or

2.  Destruction, seizure or use for a military purpose.

| | |
|---|---|
| **Communicable Disease** | "Bodily injury" or "property damage" which arises out of the transmission of a communicable disease or illness by an "insured". |

| | |
|---|---|
| **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse** | "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse. |

| | |
|---|---|
| **Controlled Substance** | "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the lawful use of prescription drugs by a person following the orders of a licensed health care provider or where the involvement with controlled substance(s) is not within the knowledge of any "insured". |

| | |
|---|---|
| **Exotic, Farm, Saddle Or Vicious Animals** | "Bodily injury" or "property damage" caused, whether in whole or in part, by: |

1.  Any exotic, farm or saddle animals; or

2.  Any animal for which the owner has been notified by a state department that the animal has been deemed dangerous, vicious, or potentially dangerous under state law;

that is owned or kept, including temporary supervision, by you or any insured, resident, tenant, or guest whether or not the injury or damage occurs on the "residence premises" or elsewhere.

Exotic, farm or saddle animals include but are not limited to hoofed animals, livestock, reptiles, primates, and fowl.

| | |
|---|---|
| **Illegal Or Criminal Acts** | "Bodily injury" or "property damage" resulting from any illegal or criminal act performed by, at the direction of, or in conspiracy with any "insured". This exclusion applies regardless of whether the "insured" is charged with a crime. |

Exclusions "Motor Vehicle", "Aircraft", and "Watercraft" Liability and "Loss On An "Insured's" Premises That Is Not An "Insured Location"" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

---

## SECTION II – ADDITIONAL COVERAGES

---

We cover the following in addition to the limits of liability:

| | |
|---|---|
| **Claim Expenses** | We pay: |

1.  Expenses we incur and costs taxed against an "insured" in any lawsuit we defend;

2.  Premiums on bonds required in a lawsuit we defend, but not for bond amounts more than the Coverage E limit of liability. We have no obligation to apply for or furnish any bond;

3.  Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or lawsuit; and

4.  Interest on the entire judgment which accrues after entry of the judgment and before we pay or

tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy.  We will not pay for first aid to an "insured".

**Damage To Property Of Others**

We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

We will not pay for "property damage":

1. To the extent of any amount recoverable under Section I;

2. Caused intentionally by an "insured" who is 13 years of age or older;

3. To property owned by an "insured";

4. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

5. Arising out of:

   a. A "business" engaged in by an "insured";

   b. Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

   c. The ownership, maintenance, occupancy, operation, use, loading or unloading of "aircraft", "watercraft" or "motor vehicles".

   This exclusion does not apply to a "motor vehicle" that:

   (1) Is designed for recreational use off public roads;

   (2) Is not owned by an "insured"; and

   (3) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**Loss Assessment**

We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by an association of property owners, when the assessment is made as a result of:

1. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

2. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

   a. Is elected by the members of a corporation or association of property owners; and

   b. Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Section II – Condition, Policy Period does not apply to this Loss Assessment Coverage.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

1. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

2. A covered act of a director, officer or trustee.  An act involving more than one director, officer or trustee is considered to be a single act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

*Copyright, American Strategic Insurance Corp., 2015*

**ASI HOS GA 04 21**

## SECTION II – CONDITIONS

| **Limit Of Liability** | Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence". |

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**What Must Be Done After A Loss**

In case of an "occurrence", you or another "insured" will perform the following duties that apply.  We have no duty to provide coverage under this policy if there is a failure to comply with the following duties.  You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:
   a. The identity of the policy and the "named insured" shown in the Declarations;
   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and
   c. Names and addresses of any claimants and witnesses;
2. Cooperate with us in the investigation, settlement or defense of any claim or suit;
3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";
4. At our request, help us:
   a. To make settlement;
   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
   c. With the conduct of suits and attend hearings and trials; and
   d. To secure and give evidence and obtain the attendance of witnesses;
5. With respect to Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;
6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**Duties Of An Injured Person – Coverage F – Medical Payments To Others**

The injured person or someone acting for the injured person will:

1. Give us written proof of claim, under oath if required, as soon as is practical; and
2. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**Lawsuit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

No one will have the right to join us as a party to any action against an "insured".

Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

| | |
|---|---|
| **Bankruptcy Of An "Insured"** | Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy. |
| **Other Insurance** | This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy. |
| **Severability Of Insurance** | This insurance applies separately to each "insured".  This condition will not increase our limit of liability for any one "occurrence". |
| **Policy Period** | This policy applies only to "bodily injury" or "property damage" which occurs during the policy period. |
| **Concealment Or Fraud** | We do not provide coverage to any "insured" who, whether before or after a loss, has: |

    **1.** Concealed or misrepresented any material fact or circumstance;

    **2.** Engaged in fraudulent conduct; or

    **3.** Made false statements;

    relating to this insurance.

---

## SECTION I AND II – CONDITIONS

---

| | |
|---|---|
| **Liberalization Clause** | If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations. |
| | This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of: |

    **1.** A subsequent edition of this policy; or

    **2.** An amendatory endorsement.

| | |
|---|---|
| **Waiver Or Change Of Policy Provisions** | A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights. |
| **Cancellation** | You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect, subject to the following: |

    **1.** If only your interest is affected, the effective date of cancellation will be the later of the following:

        **a.** The date we receive your notice of cancellation; or

        **b.** The date specified in the notice.

    However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either **1.a.** or **1.b.** above, by confirming to you in writing the date and time of cancellation.

    **2.** If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

    Our notice will state the effective date of cancellation, which will be the later of the following:

        **a.** 10 days from the date of mailing or delivering our notice; or

        **b.** The effective date of cancellation stated in your notice to us.

*Copyright, American Strategic Insurance Corp., 2015*

**ASI HOS GA 04 21**

We may cancel this policy only for the reasons stated below by letting you know in writing of the date the cancellation takes effect. This cancellation notice, stating out reasons for cancellation, may be delivered to you, or mailed to you at your last mailing address known to us. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

1.  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

2.  When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

3.  When this policy has been in effect for more than 60, or at any time if it is a renewal with us, we may cancel:

    a.  Upon discovery of fraud, concealment of a material fact or material misrepresentation made by, or with the knowledge of, any "insured" in obtaining this policy, continuing the policy, or presenting a claim under this policy;

    b.  Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    c.  Upon the violation, by the "insured", of any of the material terms or conditions of the policy.

    This can be done by letting you know at least 30 days before the date cancellation takes effect.

4.  When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your last mailing address known to us, and to any lienholder named in the policy, written notice, stating our reasons for nonrenewal, at least 30 days before the expiration date of this policy. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

**Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or to Damage To Property Of Others under Section II – Additional Coverages.

**Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1.  We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2.  "Insured" includes:

    a.  An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    b.  With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**Our Right To Recompute Premium**

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

| **Our Right To Inspect** | We reserve the right to conduct interior and exterior inspections of your "insured location" upon reasonable notice as often as we deem reasonably necessary. You must permit inspections and cooperate with us during the inspection process. |
|---|---|

---

# DEFINITIONS

---

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

In addition, certain words and phrases appear in quotations and are defined as follows:

| **"Actual Cash Value"** | means the reasonable replacement cost at the time of the loss less deduction for depreciation. The calculation of "actual cash value" includes depreciation, as determined by us, to property, materials, labor, unit costs, associated costs, overhead, profit, taxes and fees. |
|---|---|
| **"Aircraft"** | means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo. |
| **"Bodily injury"** | means physical harm to the body, including sickness or disease, and resulting death except that "bodily injury" does not include communicable diseases. |

| **"Business"** | means: |
|---|---|

1. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
2. Any other activity engaged in for money or other compensation, except the following:
   a. One or more activities, not described in **b.** through **d.** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;
   b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
   c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
   d. The rendering of home day care services to a relative of an "insured".

| **"Employee"** | means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee". |
|---|---|

| **"Insured"** | means: |
|---|---|

1. You and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above;
2. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:
   a. 24 and your relative; or
   b. 21 and in your care or the care of a person described in **1.a.** above; or
3. Under Section II:
   a. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **1.** or **2.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or

without consent of the owner; or

    **b.** With respect to a "motor vehicle" to which this policy applies:

        **(1)** Persons while engaged in your employ or that of any person included in **1.** or **2.** above; or

        **(2)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**"Insured location"** means:

**1.** The "residence premises";

**2.** The part of other premises, other structures and grounds used by you as a residence; and

    **a.** Which is shown in the Declarations; or

    **b.** Which is acquired by you during the policy period, is reported to us within 30 days of your acquisition, and is for your use as a residence;

**3.** Any premises used by you in connection with a premises described in **1.** and **2.** above;

**4.** Any part of a premises:

    **a.** Not owned by an "insured"; and

    **b.** Where an "insured" is temporarily residing;

**5.** Vacant land, other than farm land, owned by or rented to an "insured";

**6.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**7.** Individual or family cemetery plots or burial vaults of an "insured"; or

**8.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**"Motor vehicle"** means:

**1.** A self-propelled land or amphibious vehicle; or

**2.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **1.** above.

"Motor vehicle" does not include a vehicle that is:

**1.** In dead storage on an "insured location" at the time of an "occurrence";

**2.** Not subject to motor vehicle registration and is used solely to service the "residence premises";

**3.** Designed for recreational use off public roads and not owned by an "insured";

**4.** A motorized wheelchair:

    **a.** Being used to assist a handicapped person at the time of the "occurrence"; or

    **b.** Parked on an "insured location" at the time of an "occurrence"; or

**5.** A motorized golf cart that is owned by an "insured", designed to carry no more than 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    **a.** A golf course and is being used to play golf; or

    **b.** A golfing facility and is parked or stored there, or being used by an "insured" to:

        **(1)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

        **(2)** Cross public roads at designated points to access other parts of the golfing facility.

**"Occurrence"** means an accident, including exposure to harmful conditions, which results during the policy period, in:

**1.** "Bodily injury"; or

**2.** "Property damage".

Repeated or continuous exposure to the same general harmful conditions is considered to be one "occurrence".

|  | "Occurrence" does not include accidents or events which take place during the policy period which do not result in "bodily injury" or "property damage" until after the policy period. |
|---|---|
| **"Property damage"** | means physical injury to or destruction of tangible property, including loss of its use as a result of its physical injury or destruction. |
| **"Residence employee"** | means an employee of an "insured" who performs duties related to the maintenance or use of the "residence premises", including household or domestic services. |

**"Residence premises"**

means:

1. The one family dwelling, other structures, and grounds; or
2. That part of any other building;

where you reside and which is shown as the "residence premises" on the Declarations.

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

| **"Watercraft"** | means a craft principally designed to be propelled on or in water by wind, engine power or electric motor. |
|---|---|
| **"Vacant"** | means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy of the dwelling as a residence. |
| **"Unoccupied"** | means the dwelling is not being inhabited as a residence. |

**THIS ENDORSEMENT IS FOR CLARIFICATION AND DOES <u>NOT</u> CONSTITUTE A REDUCTION OF COVERAGE.**

# <u>No</u> Section II – Liability Coverages and <u>Limited</u> Section I – Property Coverages for Home Day Care Business

| | |
|---|---|
| **"Business"** | as defined in the base policy means: |

1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or
2. Any other activity engaged in for money or other compensation, except the following:
   a. One or more activities, not described in **b.** through **d.** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;
   b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
   c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
   d. The rendering of home day care services to a relative of an "insured".

**Home Day Care Business**

If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and
2. From which an "insured" receives more than $2,000 in total/combined compensation from and any other activity for the 12 months before the policy period;

the home day care service and other activity will be considered a "business".

With respect to the Home Day Care Business Paragraphs above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities described in "Business" Paragraph **2.** above and engaged in for money by a single "insured" may be considered a "business" if the $2,000 threshold is exceeded.

**No Section II – Liability Coverages, Limited Section I – Property Coverages**

With respect to Items "Business" and Home Day Care Business above, coverage does not apply to or is limited with respect to home day care service that is a "business". For example, this policy:

1. Does not provide:
   a. Section II coverages. This is because a "business" of an "insured" is excluded under Section II – Exclusions, Exclusions Applying To Coverages E And F, Item "Business";
   b. Coverage under Section I, for other structures from which any "business" is conducted; and
2. Limits coverage under Section I – Property Coverages, Coverage C – Personal Property, Special Limits of Liability for "business" property:
   a. On the "residence premises" for the home day care "business" to $2,500. This is because Special Limits of Liability, Category **5.c.** imposes that limit on all "business" property located on the "residence premises".
   b. Away from the "residence premises" for the home day care "business" to $1,500. This is because Special Limits of Liability, Category **3.g.** imposes that limit on "business" property away from the "residence premises". Category **3.g.** does not apply to property described in Special Limits of Liability, Categories **3.e.** and **3.f.**

# Limited Fungi, Wet or Dry Rot, or Bacteria Coverage – Georgia

**SCHEDULE\***

| | | |
|---|---|---|
| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule or in the Policy Declarations. | | |
| **1.** | Section **I** – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet or Dry Rot, or Bacteria | **$5,000** |
| **2.** | Section **II** – Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet or Dry Rot, or Bacteria | **$50,000** |
| *Entries may be left blank for this coverage if shown in the Policy Declarations. | | |

For **SECTION I – PROPERTY COVERAGES**, **ADDITIONAL COVERAGES**, the following is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

The amount shown in the Schedule above or in the Policy Declarations is the most we will pay for:

1. The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

2. The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

3. The cost to tear out and replace any property which is covered under Section I – Property Coverages when tear out is required to gain access to the "fungi", wet or dry rot, or bacteria; and

4. The cost of testing of air or property to confirm the absence, presence, or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during, or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is reason to believe that there is presence of "fungi", wet or dry rot, or bacteria.

This Additional Coverage for "Fungi" Wet or Dry Rot, or Bacteria only applies when loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

The amount shown in the Schedule or Declarations for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

1. Number of locations insured under this endorsement; or

2. Number of claims-made.

If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

Under **SECTION I – EXCLUSIONS** the following Exclusion is added:

| **"Fungi", Wet Or Dry Rot, Or Bacteria** | We do not cover any loss due to "fungi", wet or dry rot, or bacteria.  This includes the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria. |
|---|---|

This Exclusion does not apply:

    **a.**   When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

    **b.**   To the extent coverage is provided for in the "Fungi", Wet or Dry Rot, or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

    **c.**   With respect to "fungi", wet or dry rot, or bacteria that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

    **(1)**   The cost to treat, contain, remove or dispose of "Fungi", Wet Or Dry Rot, Or Bacteria beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

    **(2)**   The cost of any testing of air or property to confirm the absence, presence or level of "Fungi", Wet Or Dry Rot Or Bacteria whether performed prior to, during or after removal, repair, restoration or replacement; and

    **(3)**   Any increase in loss under Coverage D – Loss of Use and Additional Coverage, Debris Removal resulting from **c.(1)** and **(2)**.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

Under **SECTION I – CONDITIONS**, **Policy Period** is deleted and replaced by the following:

| **Policy Period** | This policy applies to loss or costs which occur during the policy period. |
|---|---|

Under **SECTION II – CONDITIONS**, **Limit Of Liability** is replaced by the following:

| **Limit Of Liability** | Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims-made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence". |
|---|---|

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet or Dry Rot, or Bacteria.  That sublimit is the amount shown in the Schedule or in the Declarations.  This is the most we will pay regardless of the:

    **1.**   Number of locations insured under the policy to which this endorsement is attached;

    **2.**   Number of persons injured;

    **3.**   Number of persons whose property is damaged;

    **4.**   Number of "insureds"; or

    **5.**   Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability.  It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **SECTION II – CONDITIONS**, **Limit Of Liability** of this endorsement, Condition **Severability Of Insurance** is replaced by the following:

| | |
|---|---|
| **Severability Of Insurance** | This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions, Limit Of Liability.  This condition will not increase the limit of liability for this coverage. |

Under **DEFINITIONS** the following Definition is added:

| | |
|---|---|
| **"Fungi"** | means any type or form of fungus, including mold or mildew, and any microtoxins, spores, scents or by-products produced or released by fungi. |
| | Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption. |

All other provisions of the policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Personal Property Replacement Cost Loss Settlement

For an additional premium, we will pay the full replacement cost of repair or replacement for covered losses to personal property, carpeting, household appliances, awnings, outdoor antennas and outdoor equipment, subject to all policy provisions.

**Ineligible Property For Replacement Cost Loss Settlement**

Property listed below is not eligible for loss settlement at replacement cost.  Any loss will be settled at "actual cash value" at the time of loss but not more than the amount required to repair or replace the property.

1.  Jewelry that is not separately described and specifically insured in this policy.

2.  Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

3.  Memorabilia, souvenirs, collectors' items and similar articles whose age or history contribute to their value.

4.  Articles not maintained in good or workable condition.

5.  Articles that are outdated or obsolete and are stored or not being used.

**Replacement Cost Loss Settlement Conditions**

The following loss settlement condition applies to all covered property not listed above in Ineligible Property for Replacement Cost Settlement.

1.  We will pay no more than the least of the following amounts:

    a.  Replacement cost at the time of loss without deduction for depreciation;

    b.  The full cost of repair at the time of loss;

    c.  The limit of liability that applies to Coverage C, if applicable;

    d.  Any applicable special limits of liability stated in this policy; or

    e.  For loss to any separately described and specifically insured item, the limit of liability that applies to the item.

2.  With respect to the coverage provided by this endorsement, if the cost to repair or replace all property is more than $500, we will pay no more than the "actual cash value" of each item for the loss until the actual repair or replacement is complete.

You may elect to make a claim for loss on an "actual cash value" basis and subsequently make claim for any additional replacement cost.  However, any claim for replacement cost must be made within 180 days after the date of loss.

All other provisions of your policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Water Back-Up and Sump Discharge or Overflow

Under **SECTION I – PROPERTY COVERAGES**, **ADDITIONAL COVERAGES** the following is added:

| | |
|---|---|
| **Water Back-Up And Sump Discharge Or Overflow** | We will pay up to the limit of liability shown in the Declarations for direct physical loss, not caused by an "insured's" negligence, to property covered under Section I caused by water or any other substance, which: |
| | 1. Backs up through sewers or drains; or |
| | 2. Overflows or is discharged from a: |
| |     a. Sump, sump pump; or |
| |     b. Related equipment; |
| | even if the overflow or discharge is the result of mechanical breakdown.  This Additional Coverage does not apply to the direct physical loss of the sump pump or related equipment, which is the result of mechanical breakdown. |
| | This coverage does not increase the limits of liability for Coverages A, B, C or D stated in the Declarations. |
| **Section I – Perils Insured Against** | With respect to the coverage described above under Water Back-Up And Sump Discharge or Overflow above: |
| | 1. In Form **ASI HOH**, under Section I – Perils Insured Against; Coverage A – Dwelling And Coverage B – Other Structures; Paragraph **3.g.**; |
| | 2. In Form **ASI HOS**, under Section I – Perils Insured Against;  Coverage A – Dwelling A, Coverage B – Other Structures, And Coverage C – Personal Property; Paragraph **2.f.**; and |
| | 3. In Endorsement **ASI HO SPC**, Paragraph **2.j.(2)** |
| | is deleted and replaced by the following: |
| |     Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself; |
| **Special Deductible** | The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement. |
| | We will pay only that part of the total of all loss payable under Section I that exceeds your deductible shown on the declarations page or $1,000, whichever is greater.  No other deductible applies to this coverage.  This deductible does not apply with respect to Coverage D – Loss of Use. |

Under **SECTION I – EXCLUSIONS**, **Water Damage** is replaced by the following:

| | |
|---|---|
| **Water Damage** | Water Damage means: |
| | 1. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge; |
| | 2. Water, water-borne material, sewage or any other substance which: |
| |     a. Backs up through sewers or drains; or |
| |     b. Overflows or is discharged from a sump, sump pump or related equipment; |

as a direct or indirect result of flood;

3.  Water, water-borne material, sewage or any other substance below the surface of the ground, including water or any other substance which exerts pressure on or flows, seeps or leaks through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

4.  Water-borne material carried or otherwise moved by any of the water referred to in Paragraphs **1.** through **3.** of this Exclusion.

caused by or resulting from human or animal forces or any act of nature.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water water-borne material, sewage or any other substance from a dam, levee, seawall or any other boundary or containment system.

Direct loss by fire, explosion or theft resulting from any of the above, in Paragraphs **1.** through **4.**, is covered.

All other provisions of this policy apply.

**EXHIBIT "B"**

# YOUR INSURANCE
# ATTORNEY™

**Brian P. Braddy, Esq.**
BPB@YourInsuranceAttorney.com

May 28, 2024

<u>**Via U.S. and Electronic mail**</u>
ASI Home Insurance Corp.

|         |                    |                              |
| ------- | ------------------ | ---------------------------- |
| Re:     | **Insured:**       | **Tony Larod Wilson**        |
|         | **Claim No.:**     | **1289695-231115-091003**    |
|         | **Policy No.:**    | **GAA173929**                |
|         | **Date of loss:**  | **November 26, 2023**        |
|         | **Property Location:** | **2374 Clapton Court**   |
|         |                    | **Jonesboro, GA 30236**      |

Dear Sir or Madame:

In accordance with O.C.G.A. Sec 33-4-6, this correspondence serves as the mandatory sixty (60) day pre-suit notice required by statute with respect to the bad faith claim asserted by my client(s), Tony Larod Wilson.

Upon thorough review of the circumstances surrounding this claim and despite my client's full compliance with all conditions contained in the insurance policy, it has become evident that ASI Home Insurance Corp.'s conduct in handling the claim has been unduly litigious and has caused unnecessary trouble and expense. ASI Home Insurance Corp.'s refusal to properly indemnify my client(s) for the covered loss was done frivolously, without a reasonable basis, and otherwise, in bad faith.

The violations under the Georgia Insurance Code may include but are not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue. <u>See</u> O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. <u>See</u> O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. <u>See</u> O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear. <u>See</u> O.C.G.A. § 33-6-34(4);

(5) Refusing to pay claims without conducting a reasonable investigation. <u>See</u> O.C.G.A. § 33-6-34(6);

YOUR INSURANCE
ATTORNEY™

(6) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims. <u>See</u> O.C.G.A. § 33-6-34(7); and

(7) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action. In the case of claims denials, such denials shall be in writing. <u>See</u> O.C.G.A. § 33-6-34(10);

(8) Issuing checks or drafts in partial settlement of a loss or claim under a specific coverage which contain language which releases the insurer or its insured from its total liability. <u>See</u> O.C.G.A. § 33-6-34(14).

Bad faith claims handling violation of O.C.G.A. § 33-6-34 triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Please allow this correspondence to serve as a formal demand for payment, as outlined in the enclosed estimate of damages totaling $102,757.78. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such an allegation. Otherwise, it will be assumed that you agree that a proper demand was made.

If you fail to respond to this letter with an offer of settlement that is acceptable to my client, we will have no alternative but to recommend that a lawsuit be filed against you.

In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter.

Sincerely yours,

**Brian P. Braddy, Esq.**

CLAYTON COUNTY, GA
10/16/2024 3:08 PM
Chanae Q. Clemons
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY

### STATE OF GEORGIA

TONY LAROD WILSON,

    **Plaintiff,**

**v.**

ASI HOME INSURANCE CORP,

**a foreign corporation,**

    **Defendant.**

CIVIL ACTION FILE NO.:

2024CV03683-11

## PLAINTIFF'S MOTION FOR APPOINTMENT
## OF SPECIAL PROCESS SERVER

COMES NOW Plaintiff, Tony Larod Wilson, and hereby moves the court for appointment of a special process server to serve the above listed defendant, whose registered agent is located in Georgia, personally with a copy of the summons and complaint. In support of their motion, plaintiff shows the court the following:

1.

In accordance with O.C.G.A. § 9-11-4(c), process shall be served by the marshal of the county where the action is brought or where the defendant, a resident of Georgia, is found, or by any citizen of the United States specially appointed by the court for that purpose.

2.

Plaintiff requests and moves this court to appoint Alexandra Denise Dalman as special process server who will attempt to serve the summons and complaint in this case.

3.

In the present case, the sheriff may be unable to serve the defendant before the expiration of the statute of limitations or may be unable to serve the defendant, who is difficult to locate

within the Jurisdiction.

4.

The appointment of a special process server in this case is to the benefit of all parties and is in the best interest of justice.

5.

Alexandra Denise Dalman is employed as a process server and GA licensed private investigator who specializes in locating and serving difficult to locate defendants; she is a citizen of the United States; she is over 21 years of age; she is not related to plaintiff nor plaintiff's counsel; she is neither an employee of plaintiff nor plaintiff's counsel; she is wholly disinterested in the outcome of this litigation; and she is ready, willing and able to serve the defendants, who are located in Georgia, with the summons and complaint.

6.

A proposed order granting plaintiff's motion for appointment of a special process server is attached hereto as Exhibit "A."

WHEREFORE, plaintiff requests that the court grant this motion and appoint Alexandra Denise Dalman as special process server to serve the summons and complaint on the defendant in this case.

This 4th Day of October.                    Respectfully submitted,

**Brian P. Braddy,**

**/s**
Brian P. Braddy
Attorney for Plaintiff

*Brian P. Braddy*

*Attorney At Law*

*Your Insurance Attorney, PLLC*

*5602 New Peachtree Road,*

*Atlanta, Georgia 30341*

*BPB@yourinsuranceattorney.com*

2024CV03683-11
CLAYTON COUNTY, GA
10/16/2024 3:08 PM
Chanae Q. Clemons
CLERK SUPERIOR COURT

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**

**STATE OF GEORGIA**

TONY LAROD WILSON,

    **Plaintiff,**

v.

ASI HOME INSURANCE CORP,

**a foreign corporation,**

    **Defendant.**

CIVIL ACTION FILE NO.:

2024CV03683-11

---

## AFFIDAVIT IN SUPPORT OF MOTION TO APPOINT SPECIAL PROCESS SERVER

Personally appeared, Alexandra Denise Dalman, who being duly sworn, says:

1. I am a resident of the State of Georgia and am a citizen of the United States of America.
2. I am over the age of twenty-one (21) years.
3. I am in no way a party to the above action, nor a relative of a party.
4. I am not the attorney of any of the parties.
5. I have no financial interest in the related litigation.
6. I am a wholly disinterested party in the pending litigation.
7. I am licensed by the State of Georgia as a Private Detective, appointed as a process server in other courts of Georgia, and competent under the Civil Practice Act of Georgia as an agent to perfect service.
8. I have never been convicted of a felony.

*Alexandra Dalman*
Alexandra Denise Dalman

Sworn to and Subscribed before me this

__4th__ day of __October__, 2024.

_____
Notary Public
My Commission Expires: __10-23-27__

J. DALMAN
MY COMMISSION EXPIRES
NOTARY PUBLIC
10/23/2027
DEKALB COUNTY
GEORGIA

JS

FILED
CLAYTON COUNTY, GA
10/16/2024 3:08 PM
Chanae Q. Clemons
CLERK SUPERIOR COURT

### IN THE SUPERIOR COURT OF CLAYTON COUNTY

### STATE OF GEORGIA

TONY LAROD WILSON,

    **Plaintiff,**

**v.**

ASI HOME INSURANCE CORP,

**a foreign corporation,**

    **Defendant.**

CIVIL ACTION FILE NO.:

2024CV03683-11

### **PROPOSED ORDER**

The Plaintiff having moved for an Order of this Court appointing a Special Agent for Service of Process upon the Defendant in the above styled action, and in order to serve the Defendant with Due Diligence, it is hereby ORDERED that Alexandra Denise Dalman, who is a citizen of the United States of America and is over twenty-one (21) years of age is hereby appointed as special agent for Service of Process of the summons and complaint on the Defendant in the above styled action.

SO ORDERED this _____ day of _____, 2024,

_____
ROBERT L. MACK, SUPERIOR COURT JUDGE
CLAYTON COUNTY SUPERIOR COURT

2024CV013959
CLAYTON COUNTY, GA
11/6/2024 4:37 PM
Chanae Q. Clemons
CLERK SUPERIOR COURT
12129238

# AFFIDAVIT OF SERVICE

| Case:<br>24CV013959 | Court:<br>In the State Court of Fulton County | County:<br>Fulton, GA |
|---|---|---|
| Plaintiff / Petitioner:<br>Kevin West | | Defendant / Respondent:<br>Metropolitan Atlanta Rapid Transit Authority |
| Received by:<br>Fenrir Group | | For:<br>Calvin Smith Law |
| To be served upon:<br>Metropolitan Atlanta Rapid Transit Authority | | |

I, Jonathan Dalman, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Latoya Hunter, Paralegal, Authorized to Receive Service, 2424 Piedmont Road Northeast, Atlanta, GA 30324

**Manner of Service:** Registered Agent, Nov 5, 2024, 2:45 pm EST

**Documents:** Summons; Complaint; Plaintiff's First Interrogatories; Plaintiff's Request for Production of Documents; Certificate of Service; and Case Initiation Form.

**Additional Comments:**
1) Successful Attempt: Nov 5, 2024, 2:45 pm EST at 2424 Piedmont Road Northeast, Atlanta, GA 30324 received by Latoya Hunter, Paralegal, Authorized to Receive Service.

_____     11/06/2024
Jonathan Dalman                 **Date**

Fenrir Group
Decatur, GA

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
**Notary Public**

11/6/24        10/23/27
**Date**          **Commission Expires**



2024CV03683-11
CLAYTON COUNTY, GA
11/7/2024 8:33 AM
Chanae Q. Clemons
CLERK SUPERIOR COURT
12129647

**AFFIDAVIT OF SERVICE**

| Case:<br>2024CV03683-11 | Court:<br>In the Superior Court of Clayton County | County:<br>Clayton, GA |
|---|---|---|
| Plaintiff / Petitioner:<br>Tony Larod Wilson | | Defendant / Respondent:<br>ASI Home Insurance Corp. |
| Received by:<br>Fenrir Group | | For:<br>Your Insurance Attorney |
| To be served upon:<br>ASI Home Insurance Corp. | | |

I, Alexandra Dalman, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| Recipient Name / Address: | Corporate Creations Network, Inc., c/o Dale Stepancik, 2985 Gordy Parkway Northeast 1st Floor, Marietta, GA 30066 |
| Manner of Service: | Registered Agent, Nov 6, 2024, 10:38 am EST |
| Documents: | Summons, Complaint, Civil Case Filing Information Form |

**Additional Comments:**
1) Successful Attempt: Nov 6, 2024, 10:38 am EST at 2985 Gordy Parkway Northeast 1st Floor, Marietta, GA 30066 received by Corporate Creations Network, Inc., c/o Dale Stepancik.

_____  11/06/2024
Alexandra Dalman            **Date**

Fenrir Group
Decatur, GA

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
**Notary Public**

11-06-24        10-23-27
**Date**              **Commission Expires**

J DALMAN
COMMISSION EXPIRES
NOTARY
PUBLIC
10/23/2027
DEKALB COUNTY
GEORGIA

LB

2024CV03683-11
CLAYTON COUNTY, GA
11/12/2024 10:10 AM
Chanae Q. Clemons
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON
## COUNTY STATE OF GEORGIA

|  |  |  |
|---|---|---|
| TONY LAROD WILSON, | ) ) ) ) ) ) | CIVIL FILE ACTION NO.:2024-CV-03683-11 |
| Plaintiff, | ) ) ) |  |
| v. | ) ) ) |  |
| ASI HOME INSURANCE CORPORATION, | ) ) |  |

**a foreign corporation,**

Defendant.

### RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY

Pursuant to Rule 5.2 of the Uniform Superior/State Court Rules, this is to certify that I served a true and correct copy of the following: ***PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT and PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT***, upon all parties to this matter via Statutory Electronic Service Pursuant to O.C.G.A. § 9-11-5, to the following:

This 7th day of November, 2024.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
3384 Peachtree Rd NE, Atlanta, GA 30326
Phone No.: 1-888-570-5677
Fax: 1-888-881-1075
Email: bpb@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By:*/s/Brian Braddy*
Brian Braddy, Esq.
Georgia Bar No. 967126

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed this **RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY** upon all parties to this matter by e-filing same using the Court's CM/ECF System which will automatically send email notification of said filing to counsel of record as follows:

This 7th day of November, 2024.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
3384 Peachtree Rd NE, Atlanta, GA 30326
Phone No.: 1-888-570-5677
Fax: 1-888-881-1075
Email: bpb@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By: */s/Brian Braddy*
Brian Braddy, Esq.
Georgia Bar No. 967126